UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| DISH NETWORK L.L.C. and NAGRASTAR LLC, | ) ) ) Civil Case No. _____ ) |
| Plaintiffs, | ) **FILED UNDER SEAL** ) |
| v. | ) ) |
| NELSON JOHNSON, JASON LABOSSIERE, SET BROADCAST LLC, STREAMING ENTERTAINMENT TECHNOLOGY LLC, DOE 1, as Trustee for Chateau Living Revocable Trust, and DOE 2, as Trustee for Macromint Trust, individually and collectively d/b/a www.setvnow.com, | ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) / |

## PLAINTIFFS' COMPLAINT

Plaintiffs DISH Network L.L.C. ("DISH") and NagraStar LLC ("NagraStar") (collectively with DISH, "Plaintiffs") bring this action against Defendants Nelson Johnson, Jason LaBossiere, SET Broadcast LLC, Streaming Entertainment Technology LLC, DOE 1, as trustee for Chateau Living Revocable Trust, and DOE 2, as trustee for Macromint Trust, individually and collectively d/b/a www.setvnow.com (collectively "Defendants"[1]), and state as follows:

### PARTIES

1. Plaintiff DISH Network L.L.C. is a Colorado limited liability company with its principal place of business located at 9601 South Meridian Blvd., Englewood, Colorado 80112.

---

[1] All Defendants are acting jointly in furtherance of a common scheme to steal DISH programming and resell it to unauthorized users along with their hardware devices used to receive DISH programming without authorization. (*See infra* ¶¶ 9-14.) Defendants acting jointly are collectively referred to herein as "Defendants" where appropriate. Individual defendants are referred to singularly by specific name where appropriate.

1

2. Plaintiff NagraStar LLC is a Colorado limited liability company with its principal place of business located at 90 Inverness Circle East, Englewood, Colorado 80112.

3. Upon information and belief, Defendant Nelson Johnson is an individual residing in Clearwater, Florida.

4. Upon information and belief, Defendant Jason LaBossiere is an individual residing in Seminole, Florida.

5. Defendant SET Broadcast LLC is a limited liability company organized under the laws of the State of Florida, with its principal place of business listed as 11125 Park Blvd., Ste 104-148, Seminole, Florida 33772.

6. Defendant Streaming Entertainment Technology LLC is a limited liability company formerly organized under the laws of the State of Florida, with its principal place of business listed as 11125 Park Blvd., Ste 104-148, Seminole, Florida 33772.

7. Defendant DOE 1 is a presently unknown individual acting as trustee for Chateau Living Revocable Trust, named manager in Defendant SET Broadcast LLC's Articles of Organization, with an address of 11125 Park Blvd, Ste 104-148, Seminole, Florida 33772. Upon information and belief, the Chateau Living Revocable Trust was established and named a manager of Defendant SET Broadcast LLC for the sole purpose of sheltering the ill-gotten profits made by SET Broadcast LLC and the individual defendants.

8. Defendant DOE 2 is a presently unknown individual acting as trustee for Macromint Trust, named manager in Defendant SET Broadcast LLC's Articles of Amendment to Articles of Organization, with an address of 11125 Park Blvd, Ste 104-148, Seminole, Florida 33772. Upon information and belief, the Macromint Trust was established and named a manager

of Defendant SET Broadcast LLC for the sole purpose of sheltering the ill-gotten profits made by SET Broadcast LLC and the individual defendants.

9. Upon information and belief, there is a unity of interest and ownership between Streaming Entertainment Technology LLC, SET Broadcast LLC (collectively "the SET TV Entities") and the individual defendants and trustees, preventing them from functioning as separate entities. It would be inequitable to allow the SET TV entities to assert a distinction between the SET TV Entities and these individual defendants and trustees.

10. Upon information and belief, the SET TV Entities were formed by some or all of the individual defendants for the purpose of protecting the individual defendants from judgment and in an effort to secrete monies earned by the SET TV Entities.

11. Upon information and belief, the individual defendants and trustees, acting as managers of the SET TV Entities, or in other capacities, failed to respect the separate identity of the SET TV Entities such that the separate personalities of the entities and the individual defendants no longer exist, have controlled the SET TV Entities, and have acted with intent to defraud in forming and conducting business in the names of the SET TV Entities. The recognition of the business entities would result in an injustice to Plaintiffs. Upon information and belief, actions and circumstances that warrant piercing the corporate veil include but are not limited to the following:

   a. The individual defendants and trustees exercised dominion and control over the SET TV Entities, commingling assets with and among the entities, and using the entities in furtherance of Defendants' scheme to defraud Plaintiffs;

   b. The individual defendants and trustees drained the SET TV Entities of substantial sums of money thereby undercapitalizing the SET TV Entities;

  c. The individual defendants, trustees, and the SET TV Entities caused valuable assets, property, rights and/or interests to be transferred to each other without adequate consideration, and;

  d. The individual defendants, trustees, and the SET TV Entities failed to follow formalities of corporate existence.

12. This Court should consider the individual defendants, trustees, and the SET TV Entities as one entity or "alter egos" and enter an order piercing the corporate veil of the SET TV Entities to reach the individual defendants and trustees.

13. Upon information and belief, the individual defendants Johnson and LaBossiere manage and oversee the day-to-day operations and make final decisions concerning the business of the SET TV Entities. Johnson and LaBossiere are believed to authorize, control, participate in, and receive direct financial benefits from the infringing activities of the SET TV Entities as alleged herein. Upon information and belief, the infringing acts that Johnson and LaBossiere engage in as agents of the SET TV Entities are within the scope of their agencies.

14. Any judgment pursuant to Plaintiffs' request for relief should be rendered joint and several against the individual defendants, trustees, and the SET TV Entities.

## JURISDICTION & VENUE

15. Plaintiffs assert claims under 47 U.S.C. §§ 605(a) and 605(e)(4). The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

16. Defendants reside in, conduct business in, and engage in the wrongful conduct at issue in this Complaint in Florida, and therefore are subject to this Court's personal jurisdiction.

17. Venue is appropriate in this Court under 28 U.S.C. § 1391(b)(1) because Defendants Nelson Johnson and Jason LaBossiere reside in this judicial district, § 1391(b)(2)

because a substantial part of the events giving rise to Plaintiffs' claims occurred in this judicial district, and § 1391(b)(3) because Defendants are subject to personal jurisdiction in this judicial district.

## NATURE OF THE ACTION

18. Defendants created a pirate streaming television service they have branded "SET TV". Defendants sell subscriptions and devices for the SET TV pirate streaming service, which includes numerous television channels that were received without authorization from DISH's satellite service and were subsequently retransmitted without authorization on the SET TV pirate streaming service. Defendants are believed to engage in or work in concert or participation with other persons that are receiving DISH's channels for retransmission on the SET TV pirate streaming service without authorization. Defendants' actions violate the Federal Communications Act ("FCA"), 47 U.S.C. §§ 605(a) and 605(e)(4).

## DISH'S SATELLITE TELEVISION PROGRAMMING

19. DISH is the fourth largest pay-television provider in the United States and delivers programming to millions of subscribers nationwide via a direct broadcast satellite system.

20. DISH uses high-powered satellites to broadcast, among other things, movies, sports, and general entertainment services to consumers who have been authorized to receive such services after paying a subscription fee, or in the case of a pay-per-view movie or event, the purchase price.

21. DISH contracts for and purchases rights for the programming that is distributed on its platform from network affiliates, motion picture distributors, pay and specialty broadcasters, cable networks, sports leagues, and other holders of programming rights. The

DISH programming includes the HBO, Showtime, Starz, NHL, NFL Redzone, TruTV, WE TV and Cooking channels (collectively, the "DISH Programming").

22. NagraStar provides smart cards and other proprietary security technologies that form a conditional access system used to authorize receipt of DISH's satellite programming.

23. DISH programming is scrambled prior to being transmitted to a number of satellites located in geo-synchronous orbit above Earth. The satellites relay the encrypted DISH signal back to Earth where it can be received by authorized DISH subscribers that have the necessary equipment, including a DISH receiver and NagraStar smart card. The receiver and smart card convert DISH's encrypted satellite signal into viewable programming that can be displayed on the attached television of an authorized DISH subscriber.

## **DEFENDANT'S WRONGFUL CONDUCT**

24. Defendants sell subscriptions to the SET TV pirate streaming service through various websites, including www.setvnow.com, https://store.setvnow.com, https://affiliate.setvnow.com, and https://reseller.setbroadcast.com (collectively, the "SET TV Domains"). Defendants advertise that "for only $20 per month" SET TV gives users access to over 500 live channels, "thousands of on-demand entertainment options," as well as access to "pay-per-view events such as the Floyd Mayweather and Connor McGregor boxing match."



25. The SET TV pirate streaming service is, and has been, retransmitting the DISH Programming without authorization from DISH. The DISH Programming was received from DISH's satellite television service without authorization. The DISH Programming was distributed to SET TV subscribers for Defendants' benefit and the benefit of SET TV subscribers who were not entitled to receive the DISH Programming. Messages transmitted as part of DISH's satellite television signals were observed on the DISH Programming retransmitted on the SET TV pirate streaming service, confirming that the DISH Programming originated from DISH subscriber accounts and DISH's satellite broadcasts.

26. Defendants have been selling subscriptions to the SET TV pirate streaming service through the SET TV Domains at prices starting at $20 per month. After receiving the initial payment for the SET TV pirate streaming service, Defendants provide the end user with instructions and passcodes that can be used to add the SET TV pirate streaming service to various streaming devices. At this point, the end user can receive unauthorized programming using the SET TV pirate streaming service, including the DISH Programming. Defendants also sell "Plug & Play" set-top box devices which come pre-loaded with the SET TV application.

7

27. In addition to their direct sale and distribution of subscriptions to the SET TV pirate streaming service, Defendants promote an "affiliate program" whereby Defendants offer commissions to others to generate SET TV pirate streaming service subscriptions. Defendants also utilize a "master reseller" program whereby Defendants sell subscription credits to the SET TV piracy streaming service to "master resellers" for the purpose of reselling SET TV subscriptions to other end users. Defendants also offer and sell website hosting and automation, designed specifically for selling the SET TV pirate streaming service, to its affiliates and resellers.

28. Upon information and belief, Defendants directly engage in, aid and abet, or are acting within the scope of a principal-agent relationship with other persons that are receiving and retransmitting the DISH Programming on the SET TV pirate streaming service. Evidencing their direct involvement with the retransmission of DISH Programming, Defendants state, "Our sports channels data center are hosted in Tampa Florida. We just lost power from!! hurricane Irma. Sport and NFL will be down until we regain power thank you for your patience. Set tv we appreciate your business.":



29. Defendants' wrongful conduct has caused irreparable harm to Plaintiffs for which there is no adequate remedy at law. Defendants' acts have resulted in providing an unknown

number of Defendants' SET TV subscribers with access to the DISH Programming, resulting in an unknown amount of revenues being diverted from Plaintiffs and an unknown amount of profits being received by Defendants. In addition to lost revenue and Defendants' profits, Defendants' actions cause harm to Plaintiffs in the form of loss of reputation and goodwill.

## **CLAIMS FOR RELIEF**

**(Count I – Violation Of The Federal Communications Act, 47 U.S.C. § 605(a) – On Behalf of DISH)**

30. DISH repeats and realleges the allegations in paragraphs 1-29.

31. Upon information and belief, Defendants or persons acting in concert or participation with Defendants received DISH's transmissions of the DISH Programming and retransmitted the DISH Programming on the SET TV pirate streaming service, without having authorization from DISH and for their own benefit and their subscribers, in violation of 47 U.S.C. § 605(a).

32. Defendants' sale and distribution of devices, subscriptions, applications, and passcodes to the SET TV pirate streaming service assists end users to receive the DISH Programming or the content therein, without having authorization from DISH and for the benefit of the SET TV end users, in violation of 47 U.S.C. § 605(a).

33. Defendants have been violating 47 U.S.C. § 605(a) willfully and for purposes of commercial advantage and private financial gain. Defendants knew or should have known their actions are illegal and prohibited.

34. Defendants' violations cause damage to DISH in an amount to be proven at trial. Unless enjoined by the Court, Defendants will continue to violate 47 U.S.C. § 605(a).

**(Count II – Violation Of The Federal Communications Act, 47 U.S.C. § 605(e)(4) – On**

**Behalf of All Plaintiffs)**

35. Plaintiffs repeat and reallege the allegations in paragraphs 1-29.

36. Defendants sell and distribute devices, subscriptions, applications, and passcodes used for accessing the SET TV pirate streaming service in violation of 47 U.S.C. § 605(e)(4). Defendants intend for these devices, subscriptions, applications, and passcodes to be used in receiving the DISH Programming or its content, without having authorization from DISH and for the benefit of the SET TV end users, which is activity that violates 47 U.S.C. § 605(a).

37. Defendants violated 47 U.S.C. § 605(e)(4) willfully and for purposes of commercial advantage and private financial gain. Defendants knew or should have known their actions are illegal and prohibited.

38. Defendants' violations cause damage to Plaintiffs in an amount to be proven at trial. Unless enjoined by the Court, Defendants will continue to violate 47 U.S.C. § 605(e)(4).

## **PRAYER FOR RELIEF**

WHEREFORE, DISH prays for judgment against Defendants as follows:

A. For permanent injunctive relief under 47 U.S.C. § 605(e)(3)(B)(i) restraining and enjoining Defendants, and any agent, servant, employee, attorney, or other person acting in active concert or participation with any of the foregoing that receives actual notice of the order, from:

1. receiving or assisting others in receiving DISH's satellite transmissions or the television programming contained therein without authorization, including transmitting DISH television programming or its content over the Internet or by other means, or distributing DISH television programming or its content to persons not authorized by DISH to receive or view that programming or channel; and

2. manufacturing, assembling, modifying, importing, exporting, selling, or distributing devices, subscriptions, applications, or passcodes related to the SET TV pirate streaming service, SET TV set top boxes, or any other device or equipment that is intended for receiving or assisting in receiving DISH's satellite transmissions or the television programming contained therein without authorization;

B. For an order authorizing Plaintiffs to take possession of and destroy all SET TV devices, subscriptions, applications, and passcodes, as well as all streaming devices, technologies, tools, software, products, components, or parts thereof in the custody or control of Defendants that the Court has reasonable cause to believe were involved in Defendants' violations of the FCA, pursuant to 47 U.S.C. § 605(e)(3)(B)(i);

C. For an order requiring removal of Defendants' advertisements and social media pages concerning SET TV devices, and an order requiring transfer of Defendants' websites concerning SET TV to Plaintiffs;

D. For an order directing Defendants to preserve and turn over to Plaintiffs all hard copy and electronic records concerning SET TV devices, subscriptions, applications, passcodes, or any similar product or service, including manufacturers, exporters, importers, dealers, or purchasers of such products or services, or any persons involved in receiving DISH's satellite transmissions or the programming contained therein without authorization;

E. Award DISH the greater of its actual damages together with any profits made by Defendants that are attributable to the violations alleged herein, or statutory damages in the amount of up to $10,000 for each violation of 47 U.S.C. § 605(a), under 47 U.S.C. § 605(e)(3)(C)(i), and to increase the amount by $100,000 for each violation, in accordance with 47 U.S.C. § 605(e)(3)(C)(ii);

F. Award Plaintiffs the greater of their actual damages together with any profits made by Defendants that are attributable to the violations alleged herein, or statutory damages in the amount of up to $100,000 for each violation of 47 U.S.C. § 605(e)(4), under 47 U.S.C. § 605(e)(3)(C)(i);

G. Award Plaintiffs their costs, attorney's fees, and investigative expenses under 47 U.S.C. § 605(e)(3)(B)(iii);

H. For a full and accurate accounting of all profits and other benefits received by Defendants as a result of the wrongful conduct described herein;

I. For pre and post-judgment interest on all monetary relief, from the earliest date permitted by law at the maximum rate permitted by law; and

J. For such additional relief as the Court deems just and equitable.

Dated: May 1, 2018

Respectfully submitted,

s/ James A. Boatman, Jr.
James A. Boatman, Jr. (Trial Counsel)
Florida Bar No. 0130184
**THE BOATMAN LAW FIRM, P.A.**
3021 Airport-Pulling Road North, Suite 202
Naples, Florida 34105
Telephone: (239) 330-1494
Email: courtfilings@boatman-law.com

Attorneys for Plaintiffs DISH Network L.L.C. and NagraStar LLC